UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAQUEL LIDA LEON RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>GARFIELD BEACH CVS, L.L.C.,<br><br>Defendant. | Case No.: 25cv1306-LL-KSC<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING ACTION**<br><br>**[ECF No. 6]** |

Plaintiff Raquel Lida Leon Rodriguez sued Defendant Garfield Beach CVS, L.L.C. for alleged employment-related retaliation and harassment and discrimination leading to her termination, along with other alleged California labor code violations. ECF No. 1-2. After removing the case from state to federal court, Defendant moved to compel arbitration. ECF Nos. 1, 6. The matter is fully briefed, and the Court deems it suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1. For the reasons below, the Court **GRANTS** the Motion to Compel Arbitration and **STAYS** the case.

**I.    BACKGROUND**

Defendant CVS operates retail stores and pharmacies throughout the United States. ECF No. 6-21 ¶ 3. Plaintiff worked for CVS in Vista, California, from October 2008 to November 2024. ECF No. 6-16 ¶ 8. During this time, CVS launched its arbitration policy through an online training module. *Id.* ¶ 7. CVS required everyone to complete the training,

accessible by unique log-in usernames and passwords for each employee. *Id*. ¶¶ 4–7. Once there, they had to click on a link to populate the arbitration training and policy. *Id*. ¶ 11. Upon completion, employees e-signed and acknowledged that:

- they have carefully read the CVS Health Policy 'Arbitration of Workplace Legal Disputes' (the 'Policy') and understand that it applies to them;
- they will raise any questions they may have about the Policy to their supervisor or Human Resources, and may seek independent legal advice as well;
- they can obtain copies of the Policy from their supervisor, Human Resources, or the CVS Health Policy & Procedure Portal;
- they have the opportunity, for a limited time only, to opt out of the Policy and, by doing so, not be bound by its terms;
- to opt out, they have to mail a written, signed, and dated letter, stating clearly that they wish to opt out of this Policy, within 30 days, to CVS Health, P.O. Box 969, Woonsocket, RI 02895;
- by being covered by the Policy and not opting out, they and CVS Health are obligated to go to arbitration instead of court to resolve legal claims covered by the Policy and are giving up the right to bring or participate in a class, collective or representative action brought on behalf of or regarding others to decide claims covered by the Policy;
- this e-communication satisfies any requirement that such communication be in writing; and
- clicking the 'Yes' button creates an e-signature that is legally binding.

*Id*. ¶ 12; ECF No. 6-12 ¶¶ 5–8; ECF No. 6-14, at 6.

On November 14, 2017, Plaintiff appears to have logged into this arbitration training and completed it and clicked 'Yes' to e-sign everything. ECF No. 6-16 ¶ 9; ECF No. 6-18, at 10. She didn't opt out of the arbitration policy and continued working until she was fired. ECF No. 6-16 ¶ 14. If so, she agreed to arbitrate "all legal claims" "arising out of or related to [her] employment." ECF No. 6-13, at 2.

## II.  LEGAL STANDARD

"Arbitration provides a forum for resolving disputes more expeditiously and with greater flexibility than litigation." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). Our "role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." *Id*. "If the answer is yes to both questions, the court must enforce the agreement." *Id*.

"To evaluate the validity of an arbitration agreement," we "apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (evaluating "arbitration agreement under the contract law" of California when the plaintiff "was employed in California"). Under California law, the elements for a contract are "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration." *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (citing Cal. Civ. Code § 1550).

## III.  DISCUSSION

Here, the only dispute is whether Plaintiff e-signed CVS's arbitration agreement and thereby consented to it. ECF No. 8 ("Opp.") at 2 ("Plaintiff opposes the Motion on the sole and dispositive ground that she never signed or consented to the arbitration agreement."). Plaintiff's argument is that "her then-manager, Jeffrey Nichols," had "access to her login credentials and completed training modules on her behalf," including for arbitration, meaning "there was no mutual assent, no valid arbitration agreement." *See id*. In support, Plaintiff cursorily declares that her account is true. *See* ECF No. 8-1 ¶¶ 4–9.

Yet without more, this seems rather curious. Consider Plaintiff's statement that "her then-supervisor, Jeffrey Nichols, had access to [her] login credentials for the CVS training system," and that he "either knew [her] password or reset it himself and often logged in on [her] behalf to complete required training modules." *Id*. ¶ 5. Apart from being self-serving, her story lacks corroborating details. Say, how does she come to believe that Nichols had access to her login credentials, that he knew her password or reset it himself, and that he often logged in on her behalf to complete required trainings. Equally as puzzling would be

why, particularly given her unaccommodating picture of him elsewhere. *See* Opp. at 2 (painting him as her "white male supervisor" that furthered her "hostile and discriminatory work environment" by issuing her "disproportionate job assignments" and so on). Indeed, when we read her declaration closely, she doesn't even state that Nichols completed the arbitration training at issue. Instead, it's an inference she invites this Court to make.

Such a finding is unlikely in light of CVS's long receipt of evidence. For one, CVS declares that it doesn't maintain employee passwords. ECF No. 6-16 ¶ 4. That means Nichols wouldn't have been able to easily look hers up. And even if he somehow had her username, he would've had to access her personal email in order to reset her password and log in on her behalf. ECF No. 9-1 ¶ 7. We don't need to just take corporate's word for it, though. Nichols himself declares that he has never had access to Plaintiff's credentials nor, for that matter, completed any of her trainings. *Id*. ¶¶ 5–6.

Ultimately, CVS, as the party moving to arbitrate, bears the burden of showing that a valid arbitration agreement exists. And if the opposing party disputes that she e-signed any such agreement, as Plaintiff does here, CVS must then prove "by a preponderance of the evidence that [her] electronic signature was authentic." *See Taft v. Henley Enters., Inc.*, No. 15-cv-1658-JLS-JCGx, 2016 WL 9448485, at *3 (C.D. Cal. Mar. 2, 2016).

The Court finds that CVS has provided sufficient information to satisfy its burden, to wit (1) declaring that all employees are "required to use their unique log-in ID and personalized password when they log into the" trainings and are "required to change their personalized password every 90 days," ECF No. 6-16 ¶ 4; (2) declaring that it "does not maintain a record of employee passwords" and instructing employees "not" to share their password with others, *id*.; (3) declaring that Plaintiff's "records" indicate that "she completed the [Arbitration] Training on November 14, 2017," *id*. ¶ 9; and (4) producing records showing that she "[f]inished" the "Arbitration of Workplace Legal Disputes" training on "11/14/2017," ECF No. 6-18, at 10. "Numerous district courts have found that similar evidence satisfies a moving party's burden to authenticate an electronic signature." *Taft*, 2016 WL 9448485, at *3 (collecting cases); *id*. *3–4 (finding that "a clear agreement

to arbitrate exists" when the employer declared that each employee has "a unique username and password that must be entered" to have "signed the arbitration agreement" while producing an "audit trail" to show that the employee e-signed the agreement to boot).

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Defendant's Motion to Compel Arbitration and **STAYS** the case pending resolution of arbitration. *See* Opp. at 5 ("Even if the Court were to conclude that a valid arbitration agreement exists . . . it should stay the case rather than dismiss it."); *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration," the Federal Arbitration Act "compels the court to stay the proceeding."). The parties shall file a joint status report every six months (on July 9 and January 9 of each year) *and* within one week of the arbitration action's conclusion.

IT IS SO ORDERED.

Dated:  January 9, 2026

_____
Honorable Linda Lopez
United States District Judge